1 TOMIO B. NARITA (SBN 156576)
  JEFFREY A. TOPOR (SBN 195545)
2 SIMMONDS & NARITA LLP
  44 Montgomery Street, Suite 3010
3 San Francisco, CA 94104-4816
  Telephone: (415) 283-1000
4 Facsimile:   (415) 352-2625
  tnarita@snllp.com
5 jtopor@snllp.com

6
  Attorneys for Defendants
7 Credigy Services Corporation,
  Credigy Receivables, Inc., and
8 Credigy Solutions, Inc.

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                         SAN JOSE DIVISION

13 MARTHA VASQUEZ PINTOR,            )   CASE NO.: C 07 06428 JF HRL
                                     )
14                                   )
                                     )
15          Plaintiff,               )   **MEMORANDUM IN**
                                     )   **OPPOSITION TO PLAINTIFF'S**
16                                   )   **MOTION FOR PROTECTIVE**
       vs.                           )   **ORDER BY DEFENDANTS**
17                                   )   **CREDIGY SERVICES CORP.,**
                                     )   **CREDIGY RECEIVABLES INC.**
18 CREDIGY SERVICES                  )   **AND CREDIGY SOLUTIONS**
   CORPORATION, CREDIGY             )   **INC.**
19 RECEIVABLES INC., CREDIGY         )
   SOLUTIONS INC., BRETT             )   Date:  June 24, 2008
20 BOYDE, MARK DOE, and DOES         )   Time: 10:00 a.m.
   1-10, inclusive,                  )   Ctrm:  2, 5th Floor
21                                   )
          Defendants.                )   The Honorable Howard R. Lloyd
22 _____  )

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Plaintiff Has Failed To Establish Good Cause For A
        Protective Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Any Recordings Must Be Produced Immediately Because
        Plaintiff Intends To Use Them As Substantive Evidence, To
        Prove The Truth Of Her Allegations. . . . . . . . . . . . . . . . . . . . . . . . 5

    C.  Any Surreptitious Recordings Of Live Phone Calls Are
        Relevant To Defendants' Unclean Hands Defense. . . . . . . . . . . . . 11

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1

# TABLE OF AUTHORITIES

2

3

## FEDERAL CASES

4    *Costa v. AFGO Mech. Servs., Inc.,*
     237 F.R.D. 21 (E.D.N.Y. 2006)...................................... 4, 5, 10
5
     *Jerolimo v. Physicians For Women, P.C.,*
6    238 F.R.D. 354 (D. Conn. 2006)................................ 3, 4, 5, 10
7    *Mason v. T.K. Stanley, Inc.,*
     229 F.R.D. 533 (S.D. Miss. 2005).................................... 5, 7
8
     *Poppo v. AON Risk Servs.,*
9    2000 WL 1800746 (S.D.N.Y. Dec. 6, 2000)............................ 4, 10
10   *Pro Billiards Tour Ass'n v R.J. Reynolds Tobacco Co.,*
     187 F.R.D. 299 (M.D.N.C. 1999)................................... *passim*
11
     *Renteria v. Collectcorp,*
12   2005 WL 4109338 (N.D. Cal. Oct. 26, 2005)................... 3, 5, 9, 10
13   *Rivera v. NIBCO, Inc.,*
     384 F.3d 822 (9th Cir. 2004)......................................... 3
14
     *Roberts v. Americable Int'l. Inc.,*
15   883 F. Supp. 499 (E.D. Cal. 1995). .................................. 10
16   *Sherrell Perfumes, Inc. v. Revlon, Inc.,*
     7 F.R.D. 705 (S.D.N.Y. 1977)...................................... 4, 10
17
     *Stamps v. Encore Receivables Management, Inc.,*
18   232 F.R.D. 419 (N.D. Ga. 2005)................................... *passim*
19   *Stoldt v. Centurion Indus., Inc.,*
     2005 WL 375667 (D. Kan. Feb. 3, 2005). ............................. 5, 9
20
     *Torres-Paulett v. Traditions Mariner, Inc. M/V Tradition,*
21   157 F.R.D. 487 (S.D. Cal. 1994)................................... 4, 10
22   *Walls v. International Paper, Inc.,*
     192 F.R.D. 294 (D. Kan. 2000)..................................... 4, 10

23

24

25

26

27

28

1

**STATE CASES**

2

*Coulter v. Bank of America, NTSA,*
3  28 Cal. App. 4th 766 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4  *Ion Equip. Corp. v. Nelson,*
110 Cal. App. 3d 868 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
5

6

**STATE STATUTES**

7

8  California Penal Code,

9           § 632. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            § 632(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
10          § 637.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
            § 637.2(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
11

12

13

**OTHER AUTHORITIES**

14

15  Federal Rules of Civil Procedure,

16          26. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            26(c)(1)(B).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

17

18

19

20

21

22

23

24

25

26

27

28

# I.     __INTRODUCTION__

Plaintiff Martha Vasquez Pintor ("Plaintiff") claims that she recorded telephone calls placed by employees of Credigy Services Corporation, Credigy Receivables, Inc., and Credigy Solutions, Inc. ("Defendants"). Plaintiff alleges that during the phone calls, the employees allegedly harassed, abused and threatened her. Plaintiff refuses to turn over the alleged tapes, or to provide any information about their alleged contents.

Defendants deny that the harassing calls were made, and doubt that any such recordings actually exist. Assuming that the recordings exist, however, they are relevant to Plaintiff's claims, and Defendants' defense, and therefore must be produced. Plaintiff plans to rely on the tapes as substantive evidence to prove her claims. If the calls were recorded without the collectors' consent, then Defendants would rely on the tapes in support of their unclean hands defense, and in connection with state law privacy claims that they plan to pursue.

Plaintiff suggests that she should be excused from producing any recordings in advance of the depositions of Defendants' employees, because they might conform their deposition testimony to the contents of the recordings. This makes no sense, of course, because witnesses cannot be expected to intentionally conform their testimony to recordings in which they allegedly harassed, abused or intimidated a debtor in violation of the law.

It is apparent that Plaintiff's refusal to produce the alleged tapes – or her refusal to admit that no such tapes exist – is an essential part of her settlement strategy. Plaintiff seems to believe she can obtain maximum settlement leverage by holding out as long as possible before admitting either that the tapes do not

1    exist, or that they are not really harassing or abusive after all.  But if any tapes

2    exist, they are key evidence in the case, and they must be produced.[1]

3         Plaintiff has failed to show that a protective order is necessary to protect her

4    from annoyance, embarrassment, oppression, or undue burden or expense.  Nor

5    has she shown that good cause exists for the issuance of a protective order.  The

6    motion should be denied.

7    **II.    ARGUMENT**

8         **A.    Plaintiff Has Failed To Establish Good Cause For A Protective
              Order**

9         Plaintiff contends that "Defendants engaged in a campaign of telephone

10   abuse" in an effort to coerce her into paying a debt, by making abusive and

11   harassing telephone calls, including calls in which she was allegedly falsely

12   threatened with arrest.  *See* Motion at 3:2-8.  By this motion, Plaintiff seeks an

13   order allowing her to withhold substantive evidence – audio recordings of

14   telephone calls that Defendants' employees allegedly placed to her – until after she

15   has deposed those employees.

16        Plaintiff does not explicitly state why she should be permitted to withhold

17   this key evidence until after the depositions are completed.  At best, she implies

18   that she is entitled to withhold the alleged recordings to prevent Defendants'

19   employees from conforming their deposition testimony to the contents of the

20   recordings.  Plaintiff has failed to establish that a protective order is necessary or

21   that good cause exists for issuing such an order.  Her motion should be denied.

22

23   _____

24        [1] It is ironic that Plaintiff is withholding key evidence, yet she devotes almost
     half of her motion to seeking to depict Defendants as obstructing the search for the

25   truth in this action (and in another action that the court has explicitly stated is
     unrelated to this action).  It is also ironic that – after the parties worked with a

26   mediator and "agreed to a framework to move this issue forward toward an amicable

27   resolution without the need for expensive and time-consuming motions" – it is

28   Plaintiff who has burdened the Court with this motion.

1    Upon a showing of "good cause," this Court may issue a protective order

2  "to protect a party or person from annoyance, embarrassment, oppression, or

3  undue burden or expense," including an order setting a timetable "for the

4  disclosure or discovery" of evidence.  *See* Fed. R. Civ. P. 26(c)(1)(B).  As the

5  party seeking a protective order, Plaintiff bears the burden of demonstrating good

6  cause.  *See Renteria v. Collectcorp*, 2005 WL 4109338, *1 (N.D. Cal. Oct. 26,

7  2005).

8    "'Good cause' is established where it is specifically demonstrated that

9  disclosure will cause a 'specific prejudice or harm.' . . . Courts have held that the

10  showing of 'good cause' under Rule 26 is a heavy burden. . . . 'Broad allegations

11  of harm, unsubstantiated by specific examples or articulated reasoning, do not

12  satisfy the Rule 26(c) test.'"  *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir.

13  2004) (quoted citations omitted); *see Jerolimo v. Physicians For Women, P.C.*,

14  238 F.R.D. 354, 356 (D. Conn. 2006) ("To establish good cause under Rule 26(c),

15  courts require a 'particular and specific demonstration of fact, as distinguished

16  from stereotyped and conclusory statements.'").  Plaintiff has failed to make this

17  showing.

18    First, Plaintiff has not submitted any evidence to establish that a protective

19  order is necessary to protect <u>her</u> from "annoyance, embarrassment, oppression, or

20  undue burden or expense."  She has not even discussed this threshold issue in her

21  motion.  It is hard to imagine how delaying the production of the alleged

22  recordings – which, if they exist, presumably inculpate <u>Defendants</u> – could

23  conceivably be necessary in order to protect the Plaintiff.  For this reason alone,

24  her motion should be denied.

25    Next, Plaintiff's motion should also be denied because she has failed to

26  show good cause.  In fact, Plaintiff has completely failed to articulate any cause

27  for withholding the alleged recordings.  At best, Plaintiff intimates – by citing a

28

1   handful of non-binding district court decisions[2] – that if she is required to produce

2   the alleged recordings prior to deposing Defendants' employees, those employees

3   will somehow tailor their testimony to conform with the statements allegedly

4   recorded.  Absent a showing of good cause, however, "there is no reason to

5   assume automatically that the party whose statements have been recorded will

6   have a propensity to fabricate evidence or lie during the course of his or her

7   testimony."  *See Costa v. AFGO Mech. Servs., Inc.*, 237 F.R.D. 21, 24, 26

8   (E.D.N.Y. 2006) (finding that plaintiff's "mere 'conclusory allegation'" of

9   potential for tailoring testimony "is insufficient to establish good cause"); *accord*

10  *Jerolimo*, 238 F.R.D. at 356-57.  Here, Plaintiff has not even attempted to make a

11  showing that any employee of Defendants would fabricate testimony if the tapes

12  are produced.

13          The reasoning underlying the decisions cited by Plaintiff does not apply

14  here.  Her argument presupposes that, if permitted to review the alleged recordings

15  before being deposed, Defendants' employees will then testify consistently with

16  their prior recorded statements.  If the recordings actually exist, they presumably

17  support Plaintiff's allegations that Defendants' employees abused her, harassed

18  her and threatened her with false arrest.[3]  Given the potential liability facing

19  Defendants' employees – who are defendants in this action – the more likely

20  presumption is that they would deny having abused, harassed or threatened

21

22          [2] *Poppo v. AON Risk Servs.*, 2000 WL 1800746 (S.D.N.Y. Dec. 6, 2000); *Walls*

23  *v. International Paper, Inc.*, 192 F.R.D. 294 (D. Kan. 2000); *Torres-Paulett v.*
    *Traditions Mariner, Inc. M/V Tradition*, 157 F.R.D. 487 (S.D. Cal. 1994); *Sherrell*

24  *Perfumes, Inc. v. Revlon, Inc.*, 7 F.R.D. 705 (S.D.N.Y. 1977).

25          [3] Plaintiff has provided absolutely no information about the recordings, such

26  as when the recordings were made, who made the calls, to whom the calls were made,
    how many calls were made, what time the calls were made, who the callers were, or

27  even a general description of what was said.  Instead, all that Plaintiff says is that

28  "[c]ertain phone calls were recorded."  *See* Motion at 4:3.

1   Plaintiff.  They would <u>not</u> tailor their testimony to the recordings – they would

2   testify <u>inconsistently</u> with the contents of the alleged recordings.  None of the

3   cases cited by Plaintiff make sense in this situation.

4       Plaintiff has failed to establish that there is good cause for delaying the

5   production of the alleged recordings until after Defendants' employees have been

6   deposed.  If the recordings exist, they should be produced now.  Her motion

7   should be denied.

8   **B.    Any Recordings Must Be Produced Immediately Because Plaintiff**
        **Intends To Use Them As Substantive Evidence, To Prove The**
9       **Truth Of Her Allegations**

10  Before this motion was filed, Plaintiff attempted to justify her refusal to

11  produce the alleged recordings by arguing that she intended to use them for

12  impeachment purposes only.  At that time, Plaintiff relied upon this Court's

13  decision in *Renteria v. Collectcorp*.  *See* Declaration of Balam Letona In Support

14  of Plaintiff's Motion For Protective Order, at ¶ 12.  When she filed this motion,

15  however, Plaintiff did not cite to *Renteria*, presumably because it does not apply

16  here.  Plaintiff clearly intends to use the recordings as substantive evidence in

17  support of her claims, and not solely for impeachment.

18  Numerous courts have held that recordings that constitute substantive

19  evidence must be produced prior to any deposition of the person whose statement

20  was recorded.[4]  Two of those cases are particularly instructive here.

21  In the first, *Stamps v. Encore Receivables Management, Inc.*, an FDCPA

22  action like this one, the defendant debt collector requested that the debtor produce

23  "all recorded voice mail messages" the collector had left for the debtor.  The

24  _____

25  [4] *See, e.g., Costa*, 237 F.R.D. 21; *Jerolimo*, 238 F.R.D. 354;  *Stamps v. Encore*
26  *Receivables Management, Inc.*, 232 F.R.D. 419, 423-24 (N.D. Ga. 2005);  *Mason v.*
    *T.K. Stanley, Inc.*, 229 F.R.D. 533, 534-35(S.D. Miss. 2005); *Stoldt v. Centurion*
27  *Indus., Inc.*, 2005 WL 375667, **1-2 (D. Kan. Feb. 3, 2005); *Pro Billiards Tour*
28  *Ass'n v R.J. Reynolds Tobacco Co.*, 187 F.R.D. 299 (M.D.N.C. 1999);

debtor objected to producing any recordings until after she deposed the collector

and its employees, so that she could obtain their "unrefreshed recollection of

events that gave rise to this litigation." The collector moved to compel. The court

granted the motion and ordered the debtor to promptly produce a recording of a

voicemail message left by the collector, because it was substantive evidence that

the debtor intended to use to prove her claim that the collector had abused and

harassed her. *See* 232 F.R.D. at 422-24.

Initially, the *Stamps* court construed the debtor's objection as effectively

"seeking a protective order delaying the production of the tape," and noted that the

debtor bore the burden of showing good cause for such an order. *Id.* at 423. The

court then explained that resolution of the issue "depends on the classification of

the tape as either substantive evidence or impeaching evidence," and further

explained that if the substantive value of the evidence outweighed the

impeachment value of the evidence, production of the recording would not be

delayed until after the depositions. *See id.* (citing *Pro Billiards Tour Ass'n v R.J.*

*Reynolds Tobacco Co.*, 187 F.R.D. 229 (M.D.N.C. 1999)). "When a party uses a

recording to establish the truth of the case, that recording largely constitutes

substantive evidence." *Id.*

In *Stamps*, because the debtor had referred to the recording in her complaint,

in her initial disclosures and in her response to the collector's discovery request,

the court found that the debtor was "clearly using the tape as substantive

evidence." As the court said,

> Plaintiff intends to use the tape to establish the truth of [her] allegations that
> Defendant used harassing and fraudulent means in connection with the
> collection of [her] debt. **Indeed, the real value of the recording is not in
> impeaching a witness, but in the facts and issues determined by the
> recording. The memory of a witness as to what was said is of lesser
> importance.** If the 'truth' is on the audiotape, then the value of allowing
> Plaintiff to impeach Defendant []or Defendant['s] [] representative will be
> minimal.

*Id.* (emphasis added).

The *Stamps* court also reasoned that fairness required immediate production of the recording. *See id.* The collector

> may need to verify the existence and the contents of the audio recording before subjecting itself and its representatives to a potentially misleading examination. In addition, Plaintiff used this tape to prepare for the litigation and has had the advantage of preparing her testimony on an important substantive issue in this case. In order not to distort the truth-finding process of cross-examination, Defendant [] should have the same opportunity.

*Id.*[5]

Finally, the *Stamps* court acknowledged that other courts had permitted delays in production of recordings, but "only upon a finding that such recordings may potentially provide compelling impeaching evidence." *Id.* The court found that the debtor had failed to articulate the value of obtaining Defendants' "unrefreshed recollection of the events giving rise to this litigation." *Id.* at 424. Accordingly, the court ordered the debtor to produce "all voice mails and other tapes" within five days. *Id.*

Also instructive is the case cited by the *Stamps* court, *Pro Billiards Tour Ass'n v R.J. Reynolds Tobacco Co.* There, the plaintiff recorded a meeting with representatives of the defendant. In response to the defendant's request that the recording be produced, the plaintiff sought a protective order, arguing that production should be delayed until after the plaintiff could depose the defendant's representatives and obtain "their unrefreshed and unrehearsed recollection of what

---

[5] *See also Mason*, 229 F.R.D. at 536 ("Yet there are real equitable and fairness concerns that argue in favor of compelling the production and predisposition access to such statements. As identified by the court in *Pro Billiards,* the party who created the tapes 'will have already reviewed the recording in question and would have an undue or unfair advantage of having or being able to prepare for its deposition with the recording, while denying the same opportunity to the opponent.' It certainly strains fairness and predictability, both overarching concerns of the trial process, to allow a party unlimited time to craft the perfect series of questions to ambush a deponent.").

1  was stated at that meeting," in order to preserve "the impeachment value" of the

2  recording. *See* 187 F.R.D. at 229-30. The court denied plaintiff's request.

3      The *Pro Billiards* court observed that "evidence rarely fits within a single

4  category," and that a party's recorded statement often "constitute[s] both

5  impeachment and substantive evidence." *Id.* at 230-31. The court acknowledged

6  that other courts had delayed production of evidence that had substantive and

7  impeachment value, but noted that "where the substantive value of the evidence

8  predominates, production has not been delayed until after the deposition." *Id.* at

9  231.

10      Surveying the relevant caselaw, the *Pro Billiards* court concluded that the

11  optimal criteria for deciding whether to delay production was to classify the

12  evidence based on "its relative importance as either impeachment or substantive

13  evidence." *Id.* The court reasoned that the

14      nature of substantive evidence supports this more even-handed treatment.
   'Substantive evidence is offered to establish the truth of a matter to be
15  determined by a trier of fact.' . . . **In the instance of a recording of fact
   events, surreptitious or not, the real value of the recording is not in
16  impeaching a witness, but in the facts and issues determined by the
   recording. The memory of a witness as to what was said is of lesser
17  importance**. . . . When a party seeks to use a recording which majorly
   constitutes substantive evidence, that party is using the recording to
18  establish the truth of the case. Therefore, when a party has obtained a
   recording of another party but wants to delay production until after that
19  other party's deposition, the court will deny the request where the recording
   majorly constitutes substantive evidence.
20
   *Id.* at 231-32 (emphasis added).
21
       Applying this reasoning, the *Pro Billiards* court held that the tape recording
22
   at issue – which allegedly provided evidence of an oral contract – "majorly
23
   constitutes substantive evidence" because if the "'truth' is on the audiotape, then
24
   the value of allowing plaintiff to impeach defendant's representatives will be
25
   minimal." *Id.* at 232. Consequently, the court denied the plaintiff's motion for a
26

27

28

---

1   protective order seeking to delay production of the recording until after the

2   deposition.  *Id.*[6]

3       Here, if the tapes exist, the record shows that Plaintiff plans to use the

4   recordings as substantive evidence to prove her case.  Like the debtor in *Stamps*,

5   Plaintiff's initial disclosures reveal that she may rely on "recordings of

6   communications between the parties" to prove her claims.  *See* Declaration of

7   Jeffrey Topor In Support of Defendants' Opposition to Motion For Protective

8   Order at ¶ 2, Ex. A [Plaintiff's Initial Disclosures at ¶ 3(H)].  Similarly, in

9   response to Defendants' discovery requests, Plaintiff has also identified

10  "recordings of calls" as evidence that supports all of her claims in this case.  *See*

11  *id.* at ¶ 3, Ex. B [Plaintiff's Response to Request for Production of Documents at

12  ¶¶ 1-8.]

13      Plaintiff never argues that the alleged recordings constitute impeachment

14  evidence.  Indeed, she never explains why production should be delayed.  At most,

15  she simply states that she "merely seeks to provide the tape recordings, and

16  respond to the related discovery at the appropriate time."  Motion at 8:9-10; *see id.*

17  at 10:1-2.  Like the debtor in *Stamps*, Plaintiff here has failed to articulate the

18  value of obtaining Defendants' "unrefreshed recollection of the events giving rise

19  to this litigation."  *See* 232 F.R.D. at 424.

20      Plaintiff previously argued that she was not required to produce the alleged

21  recordings because she intended to use them solely for impeachment, relying upon

22  this Court's decision in *Renteria*.  Tellingly, after Defendants pointed out that

23

24
        [6] *See also Stoldt*, 2005 WL 375667 at *2 (finding "that the conversations
25  captured on Plaintiffs' tapes directly impact Plaintiffs' claims and Defendant's
26  defenses, as the tapes allegedly record fact events that are pivotal to the present
    litigation.  Thus, the real value of the tape recordings are in their documentation of the
27  actions of Plaintiffs' co-workers and the reaction of Defendants to Heather Stoldt's
28  complaints.").

1    *Renteria* did not apply, because Plaintiff had not stated that she would use the

2    tapes solely for purposes of impeachment, Plaintiff abandoned her reliance on

3    *Renteria*.  The obvious implication of this about-face is that Plaintiff intends to use

4    the alleged recordings as substantive evidence.  Plaintiff is not entitled to a

5    protective order and should be directed to produce the recordings immediately.[7]

6        None of the authorities cited by Plaintiff are persuasive or binding here.

7    Essentially, those cases, which were acknowledged by the *Stamps* and the *Pro*

8    *Billiards* courts, seek to preserve the impeachment value of the recordings, by

9    delaying their production until after the deposition of the party whose statement

10   was recorded.  In each case, the Court's decision rested upon the presumption

11   (which does not apply here) that the deponents would <u>conform</u> their testimony to a

12   prior recorded statement if provided with access to the recordings prior to their

13   depositions.  *See Poppo*, 2000 WL 1800746 at *1; *Walls*, 192 F.R.D. at 298;

14   *Torres-Paulett*, 157 F.R.D. at 488-89.  Furthermore, none of the cases address the

15   important distinction between substantive and impeachment evidence.  *See, e.g.,*

16   *Costa*, 237 F.R.D. at 24.[8]

17

18        [7]  In addition to the concerns discussed in *Stamps* and *Pro Billiards*, other

19   courts have also considered the circumstances surrounding the recording.  If done
     surreptitiously, as was the case here, "there is a heightened justification for producing

20   the tape recordings to the defendants in advance of their depositions."  *Costa*, 237

21   F.R.D. at 26; *accord Jerolimo*, 238 F.R.D. at 357; *Roberts v. Americable Int'l. Inc.*,

22   883 F. Supp. 499, 505 (E.D. Cal. 1995).

23        [8]  Plaintiff also cites *Sherrell Perfumes, Inc. v. Revlon, Inc.*, 7 F.R.D. 705, 707

24   (S.D.N.Y. 1977).  There, with virtually no analysis whatsoever, the district court
     simply denied a motion for *de novo* review of a magistrate judge's protective order

25   postponing plaintiff's production of recordings pending the depositions of the

26   recorded persons.  The district court merely noted that the magistrate judge had
     "decided that the interest of plaintiff in determining the present unrefreshed

27   recollection of the persons whose statements are in issue outweighs any prejudice to

28   defendants."  *Id.*  Plaintiff has not asserted that she has any such interest.  Regardless,

## C. Any Surreptitious Recordings Of Live Phone Calls Are Relevant To Defendants' Unclean Hands Defense

If Plaintiff recorded any live phone calls without the consent of all parties to the call, then she violated California law. If any such recordings exist, they must be produced because they are relevant to Defendants' unclean hands defense. In addition, Defendants have standing to assert affirmative state law claims against Plaintiff if she made recordings without the collectors' consent. For these additional reasons, this motion should be denied. The tapes should be turned over.

California law prohibits the recording of live phone calls unless all parties on the call consent to the taping. *See* Cal. Penal Code § 632(a). If Plaintiff made recordings of Defendants' employees without their consent, she violated California law and has unclean hands.

In addition, Defendants may have an affirmative claim against Plaintiff under state law based upon any such recordings. Section 637.2 of the California Penal Code provides that any person injured by a recording made in violation of section 632 of that Code may bring a civil action for three times the amount of any actual damages sustained, or up to $5000 for each violation, whichever is greater. *See* Cal. Penal Code § 637.2. In addition, California courts have held that a corporation has standing to assert a claim for violations of Penal Code 632 under section 637.2 of the Code, if the secret recordings were made of calls with the corporation's employees. *See Coulter v. Bank of America, NTSA*, 28 Cal. App. 4th 766 (1994) (affirming judgment for bank and its employees for $132,000 entered against former employee who secretly taped colleagues in order to obtain evidence for his wrongful termination case); *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d

---

in light of the fairness concerns recognized by the *Stamps* court, and others, Defendants would be prejudiced by permitting Plaintiff to withhold the alleged recordings pending the depositions.

1    868 (1980) (recognizing that corporation has standing to sue under Penal Code

2    section 637.2: "The purpose of the Invasion of Privacy chapter is to deter wrongful

3    conduct. That purpose could be easily circumvented if it were not an offense to

4    eavesdrop upon or record confidential communications of corporations.  Since a

5    corporation is considered a 'person' which may be held liable for invasion of

6    privacy pursuant to Penal Code section 632, subdivision (a), we believe the

7    Legislature intended the words 'any person' stated in section 637.2, subdivision

8    (a), to include corporations as well.").

9        Any surreptitious recordings of live phone calls are relevant to Defendants'

10    affirmative defenses and to privacy claims that Defendants may assert.  They

11    should be produced promptly.

12

13   **III.**    <u>**CONCLUSION**</u>

14        For the foregoing reasons, Defendants respectfully submit that Plaintiff's

15    motion for a protective order should be denied, and Plaintiff should be ordered to

16    produce the alleged recordings immediately.

17

18    DATED:  June 3, 2008          SIMMONDS & NARITA LLP

19                                      TOMIO B. NARITA
                                     JEFFREY A. TOPOR

20

21                      By:   <u>s/Jeffrey A. Topor</u>

22                             Jeffrey A. Topor
                            Attorneys for Defendants

23                             Credigy Services Corporation,
                            Credigy Receivables, Inc., and

24                             Credigy Solutions, Inc.

25

26

27

28