Balám O. Letona, Bar No. 229642
LAW OFFICE OF BALÁM O. LETONA, INC.
1347 Pacific Avenue, Suite 203
Santa Cruz, CA 95060-3940
Tel: 831-421-0200
Fax: 831-621-9659
Email: letonalaw@gmail.com

Ronald Wilcox, Bar No. 176601
LAW OFFIC OF RONALD WILCOX
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486
Email: ronaldwilcox@post.harvard.edu

Attorneys for Plaintiff

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSÉ DIVISION**

| | |
|---|---|
| MARTHA VASQUEZ PINTOR, | Case No.: C07-06428 JF HRL |
| Plaintiffs, | **REPLY BRIEF REGARDING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER** |
| v. | Date: June 24, 2008<br>Time: 9:00 a.m.<br>Place: 280 South 1st Street<br>San Jose, CA |
| CREDIGY SERVICES CORPORATION, CREDIGY RECEIVABLES INC., CREDIGYSOLUTIONS INC., BRETT BOYDE, MARK DOE, and DOES 1-10, inclusive, | **JUDGE HOWARD R. LLOYD** |
| Defendants. | |

## I.  INTRODUCTION

The Defendants in this matter used their telephones to abuse California consumers in violation of Federal and state law. The Plaintiff demanded that the Defendants stop contacting her. The Defendants refused to stop and continued to telephone the Plaintiff.  In continuing to harass the Plaintiff with these telephone calls, the Defendants violated numerous provisions of

- 1

the Fair Debt Collection Practices Act, as well as state common law. The Defendants actions also constitute violations of California Penal Codes §653m, §519, and §524. The Plaintiff then recorded Defendants engaging in the illegal acts so as to obtain evidence of such.[1]

The Plaintiffs' motion seeks to disclose the recorded evidence after the Plaintiff has deposed certain witnesses.[2] Plaintiff is NOT attempting to withhold the recordings permanently, but merely seek a delay in the production until Plaintiff has obtained the un-refreshed, and untailored deposition testimony of Defendants and their agents. This delay does not prejudice the Defendants in any way, and aids in the search for truth in the matter.

Plaintiff intends to use the recording as impeachment evidence only.

## II. BACKGROUND

Defendants sought to collect from Plaintiff an almost ten year (10) old charged-off debt. Defendants began placing abusive telephone calls to the Plaintiffs. From the outset the Plaintiff disputed the debt in its entirety. To put an end to the constant phone calls and harassment, Plaintiff sent the Defendants a "cease and desist" letter demanding that the Defendants stop contacting her.[3] The Defendants ignored the cease and desist letter and repeatedly and continuously contacted the Plaintiff in an attempt to collect on the alleged debt. Defendants' made approximately sixty-six (66) phone calls[4] to the Plaintiff, with fifty-eight (58) of these

---

[1] The Court should note that there is a similar motion pending in the matter of Fausto *v. Credigy et al.* with Judge Seeborg under Docket number 07-05658 JW RS to be heard on June 25, 2008. The Court should note that the allegations in the *Fausto* complaint are extremely similar to the herein matter. Additionally, the Court should note that the issues raised in this motion are virtually identical to the pending motion in *Fausto*, and that there are overlapping witnesses.
[2] The witnesses Plaintiff seeks to depose prior to turning over the recorded evidence are: the F.R.C.P. 30b(6) witness (continuation); Brett Boyde (continuation); Fabiano Nasciemento Ferrao, and Renato Orlandin.
[3] Under the Fair Debt Collection Practices Act , the sending of a "cease and desist" letter prohibits the debt collector from ever contacting the Plaintiff again. See 15 USC 1692c.
[4] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §3, line 2 -10, the Live Vox, Inc. call log is attached as Exhibits 1 to the declaration.*

phone calls occurring <u>after</u> Defendant received the cease and desist letter.[5]  The Plaintiff then recorded Defendant engaging in the illegal acts so as to obtain evidence of such.

Plaintiff has begun the process of attempting to depose the relevant witnesses. Defendants produced a F.R.C.P. 30b(6) witness that was not competent to testify about the relevant phone calls, or the callers[6]. Plaintiff seeks to continue the F.R.C.P. 30b(6) deposition with a person that is competent to testify about the calls before producing the recorded evidence.[7] Plaintiff seeks to obtain the depositions of the relevant fact witnesses before producing the recorded evidence.

The Court should note that the Plaintiffs have sought to obtain available dates from the Defendants to conduct these depositions. The Defendants have not responded. As such, the Plaintiff will be forced to unilaterally notice the depositions.

### III. PLAINTIFF SEEKS TO OBTAIN THE UNREFRESHED, UNTAILORED TESTIMONY OF DEFENDANTS

The Plaintiff seeks to withhold the recorded evidence so that the relevant witnesses do not tailor their testimony to the recorded evidence. In holding that the depositions must be conducted before the production of the recordings, the court in *Poppo v. AON Risk Servs.*, 2000 U.S. Dist. LEXIS 17588 (S.D. NY 2000) engaged in an in depth analysis underlying the propriety of its decision and engaged in a review of relevant case law:

> "Since biblical times the prospect of tailoring testimony and its ramifications has been understood and condemned. This is presently seen most clearly in the sequestration of witnesses. Skipping some 2000 years, Second Circuit courts have delayed the production of audio or video tapes prior to one or more depositions in order to prevent the defendant or its

---

[5] In another case pending against Defendants in the Northern District of California, *Fausto v. Credigy et al.*, Defendants made approximately ninety (90) phone calls, with almost all of those calls being placed after a cease and desist order.

[6] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §4, line 11*

[7] Additionally, individual fact witnesses failed to appear for properly noticed depositions in the *Fausto* matter, and Defendants counsel have sought to withdraw from representing Mark Doe, a.k.a Fabiano Nasciemento Ferrao in the Vasquez matter, complicating the taking of his deposition.

1  witnesses from tailoring their testimony to conform with their prior recorded statements or
2  actions. *See Tribune Co. v. Purcigliotti, 1997 U.S. Dist. LEXIS 13165, No. 93 CV 7222,*
3  *1997 WL 540810,* at *3 (S.D.N.Y. 1997) (ordering a production of audio and video tapes
4  after the risk of altering testimony was over); *Weinhold v. Witte Heavy Lift, Inc., 1994 U.S.
   Dist. LEXIS 4559, No. 90 CIV 2096, 1994 WL 132392,* at *1 (S.D.N.Y. April 11,
5  1994)(surveillance video tape in a products liability action); *Daniels v. Nat'l R.R. Passenger
   Corp., 110 F.R.D. 160, 161 (S.D.N.Y. 1986)* (same); *Erie Conduit Corp. v. Metro. Asphalt
6  Paving Assoc., 106 F.R.D. 451, 457 (E.D.N.Y. 1985)* (stating that the Court had denied the
   defendants access to plaintiff's secretly recorded tapes until after depositions); *Sherrell
7  Perfumes, Inc. v. Revlon, Inc., 77 F.R.D. 705,* (S.D.N.Y. 1977) (delaying the production of
   surreptitiously tape recorded conversations in an antitrust action until after depositions)." *Id.*

8
9      It is clear that the Court in *Poppo* recognized the importance of not permitting the
10 Defendants to tailor their deposition testimony to the recorded statements. Just like in *Poppo,*
11 here the Plaintiff does not seek to withhold the audio tape indefinitely, but just until after the
12 depositions of relevant witnesses. Defendants will not be prejudiced by the delay in the
13 production of the recorded evidence. The Defendants will have sufficient opportunity to review
14 the audio tape before trial. The production of the audio tape *prior* to depositions can serve only
15 one purpose: to aid the Defendants in altering their deposition testimony. There is no other
16 reasonable explanation why the Defendant needs the audio tape prior to depositions. The
17 Defendants do NOT need the tape to help them prepare for depositions. The only deposition
18 preparation necessary is a direction to "tell the truth as you remember such."
19     Defendants argue that Plaintiff must show how Defendants would conform their
20 testimony. There is no such requirement. Nevertheless, the record is littered with Defendants
21 attempts to conceal and evade, consider:
22
23
24
25

1.  Defendants' counsel stipulated to represent certain Defendants (Mark Doe, a.k.a Fabiano Nasciemiento Ferrao), and accept service on his behalf, and then, reneged.[8]

2.  Defendants' counsel now claims he does not represent Mark Doe, a.k.a. Fabiano Nasciemento Ferrao, and thus is unable to accept service of a deposition notice.

3.  Defendants failed to produce a F.R.C.P. 30(b)(6) designee competent to testify about the collection calls and the callers.

4.  Defendants produced collection logs showing only approximately twenty (20) collection calls to Plaintiff[9]. However, later an agent of Defendants, Live Vox, Inc., then produced documents showing the true number of collection calls to Plaintiff to be approximately sixty-six (66).

5.  Defendants' Answer to Plaintiff's Amended Complaint denies all wrong doing, and is hopelessly littered with, "Defendants have insufficient information to either admit or deny the allegations contained therein and on that basis deny each and very allegation." See Docket #3

Turning over the tape prior to deposition, will severely prejudice the plaintiff. The witnesses independent recollection of the events in question will be immediately lost upon them when they listen to the audio tape. The witnesses' unaltered testimony will be unobtainable following the disclosure. *Torres-Paulett v. Tradition Mariner, Inc.*, 157 F.R.D. 487 (S.D. Cal 1994).

//

---

[8] Judge Fogel has continued Defendants' Motion to Withdraw from the Stipulation to July 25, 2008.

[9] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §5, line 14*

REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER C07-06428 JF HRL

**A. Equity favors disclosure of the tapes until after the deposition of relevant witnesses**

As the Plaintiff does not request to permanently withhold the tape the issue before this Court is timing. In *Parla v. Matson,* 28 F.R.D. 348 (S,.D.N.Y. 1961) the court stated:

> *The core question, therefore, is one of timing. To protect the legitimate interests of both parties – defendant's interest in determining the extent of plaintiff's present un-refreshed recollection, and plaintiff's interest in examining post-accident disclosures prior to trial so that he may honestly explain any inaccuracies or error in his present or past account of the accident – I direct that plaintiff appear for his deposition within ten days after the date of this order and that defendant bring to the examination and produce for inspection and copying upon completion of the deposition the items set forth above.*

The majority of case law outside of this Circuit also favors protecting recorded information until after deposition. *Walls v. Int'l Paper Co.,* 192 F.R.D. 294 (D. Kan. 2000) (granting a protective order in a sex discrimination case); *Torres-Paulett v. Tradition Mariner, Inc.*, 157 F.R.D. 487 (S.D. Cal 1994) (granting a protective order in a personal injury action); *McCoy v. General Motors Corp.*, 33 F.R.D. 354 (W.D. Pa. 1963) (delaying production in a personal injury action).

Plaintiff was being harassed and abused by the Defendant debt collectors. Plaintiff recorded the debt collectors so as to obtain evidence of the ongoing harassment and abuse.

Plaintiff is entitled to the un-refreshed recollection of the relevant witnesses' testimony. If the Defendants testify that they do not have any recollection of the calls, then that of itself will be telling. Moreover, the Plaintiff is entitled to that testimony on the record before the Defendants listen to the recordings. It is realistically and practically impossible for the witnesses to give such testimony once they have heard the recorded evidence. The Defendants will not be prejudiced in any way by a slight delay in disclosure. On the other hand, the Plaintiff would be prejudiced by losing the ability to establish the witnesses current/untailored recollection of the events.

The Defendants argument that there is minimal value in obtaining the witnesses un-refreshed recollection is wrong.  The Defendants made phone calls in which they engaged in a campaign of harassment and abuse using the telephone.  If this type of illegal campaign is *unremarkable* to the Defendants, then that of itself is relevant to the assessment of damages under both the FDCPA and assessment of punitive damages.

## IV. IMPEACHMENT EVIDENCE ONLY

The Plaintiff seeks to use the recorded telephone calls as impeachment evidence only.  Plaintiff does not intend to use the recordings at issue in this pending motion as substantive evidence.  The Defendants made sixty-six (66)[10] calls to the Plaintiff, with fifty-eight (58) coming after the Defendants received a "ceased and desist" letter from the Plaintiff.  The Defendants violated the law by making the telephone calls irrespective of the contents of the calls. The Plaintiff's claims will be established by the mere existence of the calls.

Notwithstanding such, the contents of the calls also contain back up evidence of violations of the law.  Plaintiff will rely upon the Plaintiff's testimony to establish such.

In fact, it is very obvious that Plaintiff would not need to use the recording as substantive evidence.  The Plaintiff was a recipient of the abusive phone calls.  The evidence that the Plaintiff would rely on in her case-in-chief would be the Plaintiff's testimony.  It would only be necessary to play recorded evidence in the event that the Defendants' witnesses chose to perjure themselves by denying having made the statements. In that event, it would be necessary for the Plaintiff to use the recording to impeach these witnesses.

## V. STATUTE AND PUBLIC POLICY PERMITS RECORDING

The Defendants argue that the recorded evidence at issue was illegally obtained and thus the Plaintiff has "unclean hands."  The Defendants also argue that they need the recorded

---

[10] *See Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition, §3, line 2 -10*

- 7 -

evidence before depositions because they want to sue the Plaintiff. While neither of these arguments is an explanation as to why the Defendants need the recordings before depositions, the Court should note that for a variety of reasons, the Plaintiff was legally permitted to record the Defendants.

*Penal Code §633.5 states*:

§ 633.5. Recording by party to communication

Nothing in Section 631, 632, 632.5, 632.6, or 632.7 prohibits one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, any felony involving violence against the person, or a violation of Section 653m. Nothing in Section 631, 632, 632.5, 632.6, or 632.7 renders any evidence so obtained inadmissible in a prosecution for extortion, kidnapping, bribery, any felony involving violence against the person, a violation of Section 653m, or any crime in connection therewith.

**A. Defendants were engaging in extortion**

*Penal Code §633.5* permits a person to record phone calls so as to obtain evidence of extortion. The Defendants attempted to extort the Plaintiff, and as such the Plaintiff was entitled to record the Defendants phone calls. Defendants attempted to extort payment from the Plaintiff by threatening her with arrest,[11] unless the Plaintiff paid them money.

*Penal Code §519*. Threats, states:

Fear, such as will constitute extortion, may be induced by a threat, either:

1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or,
2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or,
3. To expose, or to impute to him or them any deformity, disgrace or crime; or,
4. To expose, any secret affecting him or them.

*Penal Code §524*. Punishment for attempt states:

---

[11] This threat violates 15 USC 1692e; 15 USC 1692e(4), 15 USC 1692e(5); 15 USC 1692e(10); and 15 USC 1692d., See also Plaintiff's First Amended Complaint ¶ 11, page 3

> Every person who attempts, by means of any threat, such as is specified in Section 519 of this code, to extort money or other property from another is punishable by imprisonment in the county jail not longer than one year or in the state prison or by fine not exceeding ten thousand dollars ($10,000), or by both such fine and imprisonment.

Defendants' false threats to have Plaintiff arrested, unless the Plaintiff paid them money, were unlawful and extortionist threats. These threats were attempts to do "unlawful injury" to the Plaintiff and her property. The threats were also an attempt to "disgrace" the Plaintiff.

Thus, the recorded evidence clearly fits into the definition of "recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion."

### B. Obscene phone calls under Penal Code 653m

*Penal Code §633.5* permits a person to record phone calls if the phone calls are violations of Penal Code §653m. The Defendants phone calls to the Plaintiff were in violation of Penal Code §653m.

*Penal Code §653m* states:

> § 653m. Obscene, threatening or annoying telephone calls
>
> (a) Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty of a misdemeanor. Nothing in this subdivision shall apply to telephone calls or electronic contacts made in good faith.

According to *People v. Hernandez*, 231 Cal. App. 3d 1376 (1991) "obscene" under Penal Code 653m means "offensive" to one's feelings. Defendants' unlawful threats to have Plaintiff arrested, was offensive to Plaintiffs' feelings and thus "obscene." Therefore Defendants communications were in a violation of PC 653m(a), and thus clearly an exception covered under *Penal Code 633.5*.

Furthermore, as noted above, Defendants threatened to inflict injury to the Plaintiff and her property, which also violates §653m(a). Defendants threatened to have Plaintiff arrested.

### C. Repeated phone calls under Penal Code 653m:

Penal Code 653m also states:

> (b) Every person who makes repeated telephone calls or makes repeated contact by means of an electronic communication device with intent to annoy another person at his or her residence, is, whether or not conversation ensues from making the telephone call or electronic contact, guilty of a misdemeanor. Nothing in this subdivision shall apply to telephone calls or electronic contacts made in good faith.

Defendants made sixty-six (66) telephone calls to the Plaintiff, despite her cease and desist letters, and her pleas for them to stop. In *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1129, (2007), the Court noted: "the frequency and volume of the telephone calls show that defendants intended to annoy, abuse and harass plaintiff Irma Sanchez. Accordingly, plaintiffs' motion for partial summary judgment as to this claim is granted." In *Sanchez,* there were only fifty-four (54) phone calls, and there was no cease and desist letter. Whereas, in this case the Plaintiff sent a cease and desist letter, yet Defendants made more than fifty-eight (58) telephone calls after receipt.

The law clearly permits victims like the Plaintiffs to record the illegal telephone abuse and harassment. To hold otherwise, would be to encourage and immunize criminal use of the telephone and put a chilling effect on other similarly situated Plaintiffs. The Defendants threats to bring an action against the Plaintiffs under the penal code for illegal recording are not only unwarranted, but arguably unethical. [12]

---

[12] The Court should note that Defendants reference to a lawsuit against Plaintiff is <u>completely irrelevant</u> to the issue raised in this discovery motion. This motion is about the timing of disclosures in this action. The Defendants' raising the specter of Plaintiffs' alleged violations of the penal code raises serious issues of ethics and seeks to further victimize the Plaintiff.

**D. Not "Confidential Communication"**

Additionally, the Court should note that the Plaintiffs were permitted to record the Defendants because the telephone calls were not confidential communications. Penal Code §632 does not prohibit recording all communications, only "confidential communications." Penal Code 632 states:

> **(c) The term "confidential communication"** includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but **excludes a communication** made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance **in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.** Thus, if the parties have a reasonable expectation that their telephone

Simply put, if a conversation may be overheard or recorded, then the communication is not a "confidential communication." If the communication is not a confidential communication, then there is no prohibition against recording the communication.

Here, Defendants clearly intended all telephone calls to be overheard and recorded. Defendants sent Plaintiff letters indicating, **"Your calls may be monitored for quality assurance purposes."** See Amended Complaint, **Exhibits** 1, 4, 5 (second page, top line) Docket #3. Clearly the fact that the calls were being monitored shows that the callers were being listened to by third parties. Nobody had an expectation of privacy. Everyone in fact was aware that the calls were being overheard by a third party. Thus, no party to the action had an expectation of privacy.

**E. Defendants Lack Standing to Assert Claims of Privacy Invasion**

The Credigy Defendants herein were <u>not</u> even parties to the phone calls at issue, and thus lack standing to bring any claims against Plaintiffs. They are attempting to shoe horn themselves into a shoe that does not fit and deflect attention from the real issue --- when should the tapes be disclosed.

In any case, the Credigy Defendants testified that they hired an independent Brazilian debt collection company to make debt collection calls for them[13]. Credigy alleges that this independent company made the calls at issue in this motion. This Brazilian entity is separate and distinct from the three Credigy Defendants. Thus, the Credigy Defendants are not the real party in interest and have no right to assert claims for invasion of privacy. Clearly a person (or entity) claiming to have had their privacy invaded must have actually been a party to the phone calls at issue.

Finally, any voice mail messages are not confidential in any way shape or form.

## VI. CONCLUSION

The Plaintiff seeks to disclose the recorded evidence until after the Plaintiff has deposed the relevant witnesses. There is no prejudice to the Defendants to delay the disclosure of the evidence, and the Plaintiff would be irreparably prejudiced by disclosure prior to the depositions. The Plaintiff was permitted to record the Defendants for numerous reasons and thus does not have "unclean hands." As such, Plaintiff respectfully requests that the Court issue an order permitting Plaintiff to disclose the recorded evidence after obtaining the depositions of the relevant witnesses.

LAW OFFICE OF BALÁM O. LETONA, INC.

Date: June 10, 2008                             By:/s/ Balám O. Letona

Balám O. Letona Esq.
Attorney for Plaintiff

---

[13] *Declaration of Balám O. Letona In Support of Plaintiff's Reply to Defendants' Opposition ¶ 6, line 21*